E. W. Wester v. Commissioner.
E. W. Wester v. Commissioner
Docket No. 17345.
United States Tax Court
1950 Tax Ct. Memo LEXIS 263; 9 T.C.M. (CCH) 151; T.C.M. (RIA) 50059; February 28, 1950
Louis Kurz, Esq., Consolidated Bldg., Jacksonville, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax liability in the amounts of $55,521.20 for the calendar year 1943 and $7,185.40 for 1944. Income for the calendar year 1942 is included in the deficiency computation because of the forgiveness feature of the Current Tax Payment Act of 1943. The issue for decision is whether in 1942, 1943 and 1944, a valid partnership for income tax purposes existed between petitioner, his wife, and son. Issues abandoned at trial are (1) the disallowance of claimed travel expenses for 1942 in the amount of $425, and (2) the inclusion of $2,338.78 in income for 1944 as capital gains. Findings *264 of Fact The petitioner is E. W. Wester. He has a son, Norman L. Wester, born January 24, 1921, by his first wife. He married his present wife, Catherine Sapp Wester, in 1935. On January 26, 1942, the petitioner, his wife, and Norman, executed an agreement reciting that they were to be co-partners in a general contracting business under the firm name of Wester Construction Company, their interest in the business to be 40%, 30% and 30%, respectively. Partnership and individual returns for the taxable years in question 1942, 1943 and 1944, were filed with the collector for the district of Florida. Petitioner, E. W. Wester, was in business for himself during the decade of 1920. The depression wiped him out. Thereafter, he became general superintendent for general construction companies. For several years prior to 1937 and 1938, he was the general superintendent for Mr. John E. Price, who had been in the construction business for 25 years, and who owned and operated a Florida corporation entitled Okeechobee Construction Company. In 1937, petitioner expressed his desire to commence business for himself in the general construction business. He owned an old truck and a skid-rig. He had *265 also accumulated approximately $1,000. He solicited and secured a subcontract in Blounstown, Florida. The primary contract was for the construction of an overhead bridge at a price of $20,000. In order to secure the subcontract, petitioner had to be able to satisfy the contractor of his financial position. He was able to do so by including $800 belonging to his wife, and by promising the services of his son without salary, other than minor expenses needed by the son for living purposes. Petitioner made a profit of approximately $600 from the Blounstown operation. This was petitioner's first operation on his own behalf. He secured a few other subcontracts in Pensacola, St. Petersburg, and in Nassau County. The results were varying, and petitioner about broke even. They were all small construction jobs, involving bridge foundations, seawalls, bulkheads, piling and similar matters. In the performance of one of these jobs, the petitioner purchased a Ford truck, using as a down payment an automobile which he had given his wife. In 1940 petitioner entered into a partnership with John E. Price, with whom he had previously been associated as a general superintendent. Their first operation *266 was in Georgia. Price secured a subcontract. Petitioner acted as general manager. What equipment he owned was to be used in the performance of the work on the subcontract. Price furnished the majority of the equipment, and furnished the capital. Price gave petitioner $50 weekly expense money. The job proved successful, and the parties undertook further subcontract work in Charleston, South Carolina. The subcontract required until 1943 to be performed. During this period, the United States entered into its period of preparedness before war was declared in 1941. The subcontract performed by Price and petitioner was very successful, and at the time there was more business than contractors could handle. The partnership between Price and Wester was dissolved in 1943. Petitioner had received insufficient income to require the filing of a tax return between 1929 and 1941. In 1941, he filed an individual tax return reporting income in the amount of $20,399.17. Of this amount, $16,292.06 was reported as received from the partnership of J. E. Price and E. W. Wester; $5,200.48 was reported as salary and commissions received from the Okeechobee Construction Company. In connection with the preparation *267 of this return in January of 1942, petitioner had discussions with an accountant and an attorney. His wife and son did not participate. On January 26, 1942, two days subsequent to Norman's 21st birthday, a partnership agreement was executed between petitioner, his wife and son, purporting to create a partnership in which the three were to share in the proportions of 40%, 30% and 30%, respectively. Thereafter, Price was notified of the arrangement. The agreement provided, among other things, that the parties were to devote all of their time and attention to the affairs of the business, petitioner to be the manager and in general control, the wife to devote her attention to the office, and the son to be foreman and superviser of the work. The agreement recited no contribution of capital by any of the three subscribers. Each partner was to draw from the business an amount agreeable to the other partners. Dissolution and termination of the partnership was provided for upon ninety days' notice in writing, but no partner might sell or dispose of his or her interest except to the other partners. Thereafter, in 1942, 1943 and 1944, partnership and individual returns were filed on behalf *268 of the members of the family in conformity with the partnership agreement. In 1942 partnership returns were filed by the Wester-Price partnership doing business under the firm name of Wester Construction Company. For the same year, petitioner filed a partnership return on behalf of his family, also entitled "Wester Construction Company." The income reported by the Wester Construction Co., composed of the Wester family, was in the amounts of $114,230.83 for 1942, which was reported as hving been received from the Wester Construction Company of Price and Wester, $108,498.36 for 1943, and $25,960.12 for 1944. Petitioner's son, Norman, had worked for his father during the summers since he was approximately 12 years old. When he reached the 11th grade, he quite school entirely in order to make money. His father told him that if he would work for him "when the business got to where he could afford it, he would own an interest in the business." The son worked for his father until the father became associated with Mr. Price. At this time the son was placed upon the payroll of the Price-Wester enterprise. He worked as a laborer. The son quit this job in July or August of 1942. He was drafted *269 into the Army as of March 13, 1943. He was discharged March 8, 1946. The father retired from business because of ill health in 1945. Petitioner's superintendent then took charge of the business until the son returned from the Army, at which time the superintendent and the son took over the entire operation of the business. Petitioner's wife graduated from high school in 1925. She then took a three-month business course in bookkeeping, typing, and shorthand. Thereafter, she became a telephone operator receiving a salary of between $18 and $20 a week. When she was married to petitioner in 1935, she had $800 which she gave to petitioner when he began operating his own business. Two of petitioner's children were born to her on February 6, 1936, and July 5, 1939. She never had a maid and did all of her own housework. A home was purchased in Jacksonville, Florida, in the name of the husband and wife, in 1937 or 1938, which cost approximately $2,500. The home was purchased after the Blounstown operations by a down payment and monthly installments. The wife maintained some records in the form of a simple memorandum cash receipts and disbursements account of all family expenditures until *270 June, 1942, after which business records were maintained by an employee of petitioner. Thereafter, the wife had no connection with the business operation of petitioner. The records, after June, 1942, among other things, consisted of a single investment account for the Wester family partnership. There were three drawing accounts. Family living expenses were divided three ways. The wife made no drawings, and the son drew only minor amounts. No division of the profits was ever made. No salary was paid to the son or the wife. The largest items of the drawing account are for the payment of income taxes. Petitioner, his wife, and son did not really and truly join together and do business as partners in the taxable years before us. Opinion KERN, Judge: From a not too satisfactory record, we must determine whether the petitioner, his wife and son "in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise" as partners. , In 1941, for the first time in over a decade, petitioner was successful and received sufficient income to file a tax return. He had had an active business *271 in 1941 and expected large profits in 1942, and continued prosperity due to preparedness and war effort. In January, 1942, at the time of preparing the 1941 tax return with his attorney and his accountant, petitioner caused a partnership agreement between himself, his wife and son to be drafted. The latter were not present at the time, nor participated in the conferences with the attorney. The agreement was later executed by the parties as of January 26, 1942, and thereafter, profits received by petitioner were reported in conformity with this agreement. In resolving the present issue, we must seek the true substance of the transaction, disregarding form, if necessary. ; . A review of the evidence discloses that the wife had no connection with business operations for 1941 or the years in question. The son was incidentally connected with the business since he worked and was paid salary as a laborer during seven or eight months of the first of the three taxable years in question. The purported partnership agreement gave to the wife and son few of the rights customarily held by partners. *272 They could not freely dispose of their interests or receive any benefits without petitioner's consent. The son and wife contributed no capital and no services. They did not participate in any way in management, control, or even incidental decisions. It is also interesting to note, in passing, that there was no statutory public holding out of the business as a partnership. Although this partnership agreement was purportedly "legalized," petitioner did not indicate compliance with Florida laws "emancipating" the wife, or publish the existence of the purported partnership consisting of himself, his wife and son, and doing business under a fictitious name. See Florida 1941 Statutes, Sections 62.27 ff. and 865.09. At the same time petitioner is faced with a further major difficulty. For 1942 two partnership returns were filed for the "Wester Construction Company." One reported a division of one-half of the profits reported on the other. The evidence discloses that petitioner became successful in 1941 and 1942 in partnership with his former boss, J. E. Price. The reality of this partnership is not questioned. The joint efforts of both men and their combined capital and equipment were highly *273 successful from 1940 to 1943 when the partnership was dissolved. The relationship began in Georgia and terminated in South Carolina. It was originally known as the "Price-Wester Construction Company" in 1940 and 1941. When the partnership moved to South Carolina in 1941, it became known as the Wester Construction Company. Price was notified in 1942 that petitioner's wife and son would receive a proportion of petitioner's fifty per cent share in the Price-Wester enterprises for tax purposes. This secondary family partnership could well be regarded as an assignment of income under the rule of . Petitioner's contribution to the original Price-Wester partnership appears to be predominantly a matter of personal service. See , affd. ; certiorari denied, ; . Price secured a subcontract. Price gave petitioner a personal expense allowance, furnished the capital and all equipment except two or three items of undisclosed usage. The petitioner's sole duty was to supervise the general execution of the subcontract. *274 Petitioner's subsequent ownership of many capital items derives from this operation. The family partnership agreement mentions no gift or contribution of capital items. Petitioner now contends that the partnership agreement of 1942 in the light of the record is "simply a continuation of the [family] partnership organized in 1938 and had the benefit of the additional equipment and experience accumulated in the interval, which accumulation was based on capital and services contributed to the partnership in the prior years." [1] With this contention we are unable to agree. From a full consideration of all the circumstances of the record, we can not believe that the petitioner, his wife and son, in good faith and acting with a business purpose, really and truly intended to join together as partners in the conduct of any enterprise. Decision will be entered for respondent. Footnotes
1. Petitioner's reply brief, pp. 4 and 5.↩